# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### BIG STONE GAP DIVISION

| | | |
|---|---|---|
| **DANIEL L. KEEN,** | ) | |
| Plaintiff | ) | |
| v. | ) | Civil Action No. 2:14cv00022 |
| | ) | **MEMORANDUM OPINION** |
| **CAROLYN W. COLVIN,** | ) | |
| **Acting Commissioner of** | ) | |
| **Social Security,** | ) | By:  PAMELA MEADE SARGENT |
| Defendant | ) | United States Magistrate Judge |

## I. Background and Standard of Review

Plaintiff, Daniel L. Keen, ("Keen"), filed this action challenging the final decision of the Commissioner of Social Security, ("Commissioner"), denying his claims for disability insurance benefits, ("DIB"), and supplemental security income, ("SSI"), under the Social Security Act, as amended, ("Act"), 42 U.S.C.A. §§ 423 and 1381 *et seq.* (West 2011 & West 2012). Jurisdiction of this court is pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). This case is before the undersigned magistrate judge upon transfer by consent of the parties pursuant to 28 U.S.C. § 636(c)(1).

The court's review in this case is limited to determining if the factual findings of the Commissioner are supported by substantial evidence and were reached through application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence has been defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion.  It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance."  *Laws v. Celebrezze,* 368 F.2d 640, 642

Case 2:14-cv-00022-PMS   Document 15   Filed 09/23/15   Page 1 of 21   Pageid#: 803

(4th Cir. 1966). "'If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."'" *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) (quoting *Laws*, 368 F.2d at 642).

The record shows that Keen protectively filed his applications for SSI and DIB on March 21, 2011, alleging disability as of January 13, 2011, due to degenerative disc disease, numbness in both legs, severe headaches, carpal tunnel, tremors, bipolar disorder, depression, anxiety and memory loss. (Record, ("R."), at 73, 205-06, 209-15, 235, 239.) The claims were denied initially and upon reconsideration. (R. at 73-84, 99-111, 127-29, 137, 139-41, 143-45, 146-48, 150-52.) Keen then requested a hearing before an administrative law judge, ("ALJ"). (R. at 153-54.) A hearing was held on November 16, 2012, at which Keen was represented by counsel. (R. at 40-72.)

By decision dated December 7, 2012, the ALJ denied Keen's claims. (R. at 22-34.) The ALJ found that Keen met the disability insured status requirements of the Act for DIB purposes through December 31, 2014. (R. at 24.) The ALJ found that Keen had not engaged in substantial gainful activity since January 13, 2011, the alleged onset date. (R. at 24.) The ALJ found that the medical evidence established that Keen had severe impairments, namely degenerative disc disease of the lumbar, thoracic and cervical spine, depressive/affective disorder and an anxiety disorder, but he found that Keen did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 24-26.) The ALJ found that Keen had the residual functional capacity to perform the full range of

sedentary[1] work, except that he must stand and stretch every 30 minutes, can occasionally reach overhead, stoop, crouch, kneel or climb ramps and stairs, can never climb ladders, ropes or scaffolds, work around heights or use foot controls and is limited to short, simple instructions with superficial interaction with others. (R. at 26-32.) The ALJ found that Keen could not perform his past relevant work as a survey helper, a furnace installer or a warehouse worker. (R. at 32.) Based on Keen's age, education, work history and residual functional capacity and the testimony of a vocational expert, the ALJ found that a significant number of jobs existed in the national economy that Keen could perform, including jobs as a production worker, a packager and an inspector/tester/sorter. (R. at 33.) Thus, the ALJ concluded that Keen was not under a disability as defined by the Act and was not eligible for DIB or SSI benefits. (R. at 33-34.) *See* 20 C.F.R. §§ 404.1520(g), 416.920(g) (2015).

After the ALJ issued his decision, Keen pursued his administrative appeals, but the Appeals Council denied his request for review. (R. at 1-5, 18.) Keen then filed this action seeking review of the ALJ's unfavorable decision, which now stands as the Commissioner's final decision. *See* 20 C.F.R. §§ 404.981, 416.1481 (2015). This case is before this court on Keen's motion for summary judgment filed November 14, 2014, and the Commissioner's motion for summary judgment filed December 10, 2014.

---

[1] Sedentary work involves lifting items weighing up to 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking or standing is often necessary in carrying out job duties. Jobs are sedentary if walking or standing are required occasionally and other sedentary criteria are met. *See* 20 C.F.R. §§ 404.1567(a), 416.967(a) (2015).

## II. Facts

Keen was born in 1967, (R. at 73), which classifies him as a "younger person" under 20 C.F.R. §§ 404.1563(c), 416.963(c). Keen has a high school diploma and past work experience as a surveyor helper. (R. at 49.)

At his hearing, Keen testified that he experienced sharp pain in his left lower back which ran down his leg into his foot. (R. at 51.) Keen also stated that he had problems with his neck and severe headaches that lasted two or three days at a time. (R. at 51.) Keen stated that he could not sit, stand or walk for more than one hour at a time. (R. at 52.) Keen testified that his headaches prevented him from concentrating at all. (R. 52.) Keen stated that his pain medication did help his pain level, but it did not alleviate the pain. (R. at 53.) Keen also stated that he has to lie down up to five hours a day. (R. at 58.)

Ashley Wells, a vocational expert, also was present and testified at Keen's hearing. (R. at 68-71.) Wells classified Keen's work as a survery helper as medium[2] and semi-skilled. (R. at 68.) Wells classified Keen's work as a furnace installer and a warehouse worker as heavy[3] and unskilled. (R. at 68.) Wells was asked to consider a hypothetical individual of Keens's age, education and work experience who was capable of performing sedentary work with the option of standing and stretching every 30 minutes. (R. at 68-69.) She was asked to assume

---

[2] Medium work involves lifting items weighing up to 50 pounds at a time with frequent lifting or carrying of items weighing up to 25 pounds. If an individual can do medium work, he also can do sedentary and light work. *See* 20 C.F.R. §§ 404.1567(c), 416.967(c) (2015).

[3] Heavy work is defined as work that involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds. If an individual can do heavy work, he also can do sedentary, light and medium work. *See* 20 C.F.R. §§ 404.1567(d), 416.967(d) (2015).

-4-

this individual would be able to occasionally stoop, crouch, kneel, climb and reach overhead, but would not be able to climb ladders, work at unprotected heights or to use foot controls. (R. at 69.) The individual would be able to understand, remember and carry out short, simple instructions throughout an eight-hour workday with ordinary scheduled breaks and would be able to have superficial interaction with others in the workplace. (R. at 69.)

Wells stated that such an individual could perform work as a production worker, a packaging and filling machine operator and an inspector, tester or sorter. (R. at 69-70.) Wells stated there would be no jobs for someone whose abilities were unsatisfactory with regard to relating with co-workers, dealing with the public, using judgment with the public and complex job instructions, and who had no useful ability to deal with work stresses, to relate predictably in social situations and to demonstrate reliability. (R. at 70-71.)

 In rendering his decision, the ALJ reviewed medical records from Health and Beauty Clinic; Dickenson Community Hospital; Dickenson County Community Services; Dominion Health and Fitness; Cloverleaf Chiropractic; Norton Community Hospital; Dr. Donald Williams, M.D., a state agency physician; Jo McClain, PC, a state agency mental health professional; Dr. Joseph Duckwall, M.D., a state agency physician; Dr. Uzma Ehtesham, M.D., a psychiatrist; and Dr. Luciano D'Amato, M.D.

On July 23, 2004, Keen sought treatment at Norton Community Hospital's emergency room for a headache with nausea and vomiting. (R. at 303-04.) He was given Phenergan and Toradol and discharged home. (R. at 304.)

Case 2:14-cv-00022-PMS   Document 15   Filed 09/23/15   Page 5 of 21   Pageid#: 807

On August 5, 2005, an MRI was taken of Keen's brain, which was reported as normal. (R. at 314-15.) On September 15, 2005, an MRI of Keen's cervical spine showed mild multilevel degenerative disc disease without disc herniation or significant central canal stenosis. (R. at 316.) There was some multilevel foraminal stenosis shown. (R. at 316.)

Keen treated with Dr. Uzma Ehtesham, M.D., a psychiatrist, on September 14, 2005. (R. at 298-99.) Dr. Ehtesham stated that Keen was taking Valium for problems with his "nerves" and complained of feeling shaky at times, sad and frustrated. (R. at 298.) Keen complained of mood swings and racing thoughts. (R. at 298.) Keen also stated that he suffered from headaches and hypertension. (R. at 298.) Dr. Ehtesham diagnosed Keen with bipolar disorder and a generalized anxiety disorder. (R. at 299.) Dr. Ehtesham prescribed Trileptal and continued Keen on Valium. (R. at 299.)

On January 11, 2008, Keen was treated for high blood pressure at Norton Community Hospital's emergency room. (R. at 318-35.) Keen treated at Cloverleaf Chiropractic from January 31, 2008, to June 22, 2011, for complaints of lower back and neck pain. (R. at 337-77, 495-555.) The chiropractor diagnosed pelvic subulaxtion, sciatica, cervical subulaxtion and cervicalgia. (R. at 339.) Over this time period, Keen reported that the chiropractic manipulations helped his pain. (R. at 343, 345, 347, 349-50, 354, 356, 358-61, 371, 377, 496, 505, 507, 516, 520, 525-26, 528, 530, 533-35, 545-46, 548, 551-52.) Notes from from January 16, 2009, to May 13, 2011, show improving low back pain. (R. at 495-96, 498-552.)

Keen was seen at the Health and Beauty Clinic on January 14, 2011, for complaints of low back, neck and left leg pain. (R. at 447-48.) Keen stated that he

had not seen a doctor in more than a year. (R. at 447.) Keen reported he was experiencing pain at a level of five on a 10-point scale. (R. at 447.) Keen also complained of anxiety and depression. (R. at 447.) The physician, whose handwriting is largely illegible, ordered x-rays of Keen's back and prescribed Lortab and Valium. (R. at 448.) X-rays taken on January 18, 2011, showed degenerative changes in Keen's lumbar, thoracic and cervical spine. (R. at 472-74.) On January 28, 2011, Keen was diagnosed with uncontrolled hypertension, gastroesophageal reflux disease, ("GERD"), tension headaches, low back and neck pain and anxiety and depression. (R. at 450.) On February 11, 2011, Keen reported that his insurance would not pay for him to receive an MRI of his back without first attending physical therapy. (R. at 451.)

Keen received physical therapy at Dominion Health and Fitness from February 15, to March 7, 2011. (R. at 379-92.) At discharge, Keen reported that his neck and back pain had improved "just a little." (R. at 379.) The discharge note states that Keen's functional ability to walk and stand were moderately limited, and his ability to sit was mildly limited. (R. at 379.) Objective active range of motion testing showed that Keen's range of motion in his neck and lower back improved some over the course of treatment. (R. at 379-80.) Keen discontinued therapy because he thought he had suffered a hernia. (R. at 383.) Records from the emergency room at Dickenson Community Hospital confirm that he sought treatment on February 26, 2011, for severe pain in his right testicle. (R. at 397-99.)

Keen returned to the Health and Beauty Clinic on March 1, 2011, complaining of right side testicular pain. (R. at 453.) Keen was diagnosed with a right inguinal hernia. (R. at 454.) On March 25, 2011, Keen was referred for a surgical consult for his hernia. (R. at 457.) On April 14, 2011, Keen complained of

back and right groin pain of a nine on a 10-point scale. (R. at 459.) On May 12, 2011, Keen stated that his pain was a four on a 10-point scale. (R. at 461.)

Keen saw Dr. Luciano D'Amato, M.D., for surgical consult on May 4, 2011. (R. at 485.) Based on his examination, Dr. D'Amato stated that Keen suffered a pulled groin muscle instead of an inguinal hernia. (R. at 485, 488.)

Keen began attended counseling with Colby Ball and James Counts, both QMHPs at Dickenson County Behavioral Health, on October 12, 2010. (R. at 426-44, 579-90, 592.) Keen saw Ball on October 12, 2010, for complaints of depressive disorder and generalized anxiety disorder. (R. at 437-42.) Ball placed Keen's then-current Global Assessment of Functioning, ("GAF"), score[4] at 55.[5] (R. at 438-39, 441.) Keen stated that his hours at work were "getting cut in half," and he was under stress and worry about paying his bills. (R. at 442.) Keen expressed an interest in obtaining disability payments. (R. at 442.) On December 3, 2010, Keen told Counts he was working part-time. (R. at 443.) Keen continued to report depression and anxiety over financial issues due to being cut back to part-time work and depression due to grief issues. (R. at 443.) Keen's goals included supportive counseling and discussion of his depression and anxiety. (R. at 443-44.) On January 18, 2011, Keen told Counts that he was dealing "okay" with his depression. (R. at 434.) He reported that his depression was not as bad. (R. at 434.)

---

[4] The GAF scale ranges from zero to 100 and "[c]onsider[s] psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS FOURTH EDITION, ("DSM-IV"), 32 (American Psychiatric Association 1994).

[5] A GAF score of 51-60 indicates that the individual has "[m]oderate symptoms ... OR moderate difficulty in social, occupational, or school functioning...." DSM-IV at 32.

On February 28, 2011, Counts discussed applying for disability benefits with Keen based on Keen's statement that he was unsure if he could physically continue to work. (R. at 431.) Keen stated that he continued to battle depression. (R. at 431.) On March 28, 2011, Keen told Counts he was in constant pain due to physical issues and suffered depression daily. (R. at 429-30.) On April 20, 2011, Counts reported that Keen came to his counseling appointment walking with a cane. (R. at 427.)

On May 23, 2011, Counts's notes make no mention of Keen using a cane. (R. at 586-90.) Instead, Counts specifically states that Keen is at no risk of falls. (R. at 589.) Counts did note that Keen complained of difficulty getting out of bed and moving around. (R. at 587.) The note also states that Keen incorrectly told Counts that Dr. D'Amato had said that his groin pain was coming from his back problem. (R. at 587.) On June 22, 2011, Counts noted that Keen said he was depressed because his disability claim had been denied. (R. at 584.) On July 20, 2011, Counts encouraged Keen to get out of the house more to combat his depression. (R at 582.)

On September 28, 2011, Counts completed a Medical Assessment Of Ability To Do Work-Related Activities (Mental), which stated that Keen had an unsatisfactory ability or no useful ability to make all occupational, performance and personal-social work adjustments. (R. at 592-94.) Counts did state that Keen could follow simple job instructions for a short period of time. (R. at 593.) Counts stated that these limitations were due, in part, to Keen's subjective complaints of disabling pain. (R. at 593.) It is important to note that Counts's September 27, 2011, office note states that Keen assisted Counts in completing this form. (R. at

596-97.) On November 30, 2011, Keen reported suffering from daily, uncontrollable crying spells. (R. at 602.)

Based on his review of the medical evidence of record, Dr. Donald Williams, M.D., a state agency physician, on May 31, 2011, stated that Keen was capable of occasionally lifting and carrying items weighing up to 20 pounds and frequently lifting and carrying items weighing up to 10 pounds. (R. at 79.) Dr. Williams stated that Keen could stand and/or walk and sit for a total of six hours in an eight-hour workday. (R. at 79.) He stated that Keen could occasionally climb ramps and stairs, climb ladders, ropes and scaffolds, balance, stoop, kneel, crouch and crawl and should avoid concentrated exposure to vibration, machinery and heights. (R. at 79-80.)

Jo McClain, PC, a state agency mental health professional, completed a Mental Residual Functional Capacity Assessment on June 6, 2011, stating that Keen was moderately limited in his ability to understand, remember and carry out detailed instructions, to maintain attention and concentration for extended periods, to complete a normal workday and workweek without interruption from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods and to interact appropriately with the general public. (R. at 80-82.) McClain stated, "In spite of limitations caused by claimant's anxiety and depression, he retains the ability to perform simple work that limits interactions with [the] general public. (R. at 82.)

Keen was treated on August 17, 2011, at Dickenson Community Hospital's emergency room after being hit in the eye with a rock while doing yardwork. (R. at 558-60.)

Based on his review of the medical evidence of record, Dr. Joseph Duckwall, M.D., a state agency physician, on September 6, 2011, completed a Residual Functional Capacity evaluation, stating that Keen was capable of occasionally lifting and carrying items weighing up to 20 pounds and frequently lifting and carrying items weighing up to 10 pounds. (R. at 118-20.) Dr. Duckwall stated that Keen could stand and/or walk  and sit for a total of six hours in an eight-hour workday. (R. at 118.) Dr. Duckwall stated that Keen's ability to push and pull was limited in his lower extremities. (R. at 118.) He also stated that Keen's ability to reach overhead was limited. (R. at 119.) He stated that Keen could occasionally climb ramps and stairs, balance, stoop, kneel and crouch and should avoid concentrated exposure to vibration, machinery and heights. (R. at 118-20.) He stated that Keen could never climb ladders, ropes and scaffolds or crawl. (R. at 118-19.)

Dr. Andrew Bockner, M.D., a state agency physician, completed a Mental Residual Functional Capacity Assessment on September 6, 2011, stating that Keen was moderately limited in his ability to understand, remember and carry out detailed instructions, to maintain attention and concentration for extended periods, to complete a normal workday and workweek without interruption from psychologically based symptoms, to respond appropriately to changes in the work setting and to perform at a consistent pace without an unreasonable number and length of rest periods and to interact appropriately with the general public. (R. at 120-22.) Dr. Bockner stated that Keen was able to understand and remember simple 1-2 step tasks, to work for at least two hours at a time between breaks and be punctual and sustain regular attendance. (R. at 120-21.) He further stated that Keen was able to set goals and to complete simple routines, to understand hazards

and safety issues and to adapt adequately to changes and demands doing simple work tasks. (R. at 122.)

The record also contains reports which purport to show that Keen returned to treatment at the Health and Beauty Clinic from June 9, 2011, to Ocotober 29, 2012. (R. at 612-37, 639-43, 653-67, 727-31.) Most of the notes of these visits are undated and illegible. From reviewing the office notes, I cannot determine if any physical examination of Keen occurred at any of these visits. On July 21, 2011, Keen completed a Chronic Pain Assessment stating that his pain level before medication was a four on a 10-point scale. (R. at 616.) On August 25, 2011, Keen listed this pain level as six, (R. at 619), and on September 27, 2011, he listed this pain level as a five. (R. at 620.) On each of these forms, Keen stated that his pain medication was helping. (R. at 616, 619-20.) On October 25, 2011, Keen reported that his pain level was a three on a 10-point scale and that his depression was doing better since he began taking Celexa. (R. at 623, 625.) On November 22, 2011, Keen reported that his pain level was a five, (R. at 628), and on December 20, 2011, he reported that his pain level was a six. (R. at 631.) He reported that his pain was the same on January 18, 2011. (R. at 634.) On February 15, 2012, Keen reported that his pain level was a two, (R. at 637), and on April 11, 2012, he reported that his pain level was a three. (R. at 641.) On June 6, 2012, he reported his pain level was a six. (R. at 656.) On July 10, 2012, he reported his pain level was a four. (R. at 659.) On August 7, 2012, he reported his pain level was a five. (R. at 662.) On September 4, 2012, he reported that his pain level was a four. (R. at 665.)

On October 1, 2012, Keen reported increased neck and back pain. (R. at 727.) He reported that his pain level was a seven. (R. at 729.) On October 29,

2012, Keen reported less pain in his shoulder, neck, back and legs. (R. at 730-31.) He reported his pain level was a five. (R. at 732.)

Keen saw Counts at Dickenson County Behavioral Health again on March 29, 2012. (R. at 645-46.) On this date, Keen told Counts he experienced constant pain in his legs and back, which made it difficult for him to walk. (R. at 646.) On April 16, 2012, Keen reported that he continued to be depressed due to an inability to work due to chronic physical pain and limitations. (R. at 648.) On April 25, 2012, Keen complained of problems sleeping due to a constant stabbing pain in his back. (R. at 651.) He also complained of pain radiating down his legs and arms. (R. at 651.) On August 6, 2012, Keen complained of pain in his back, knees and feet, which he said limited his mobility. (R. at 674.) On August 29, 2012, Keen stated that he was upset at the "system" because he was still waiting on a decision on his disability claim. (R. at 676.) On October 15, 2012, Keen reported that Celexa was helping his depression. (R. at 725.) Keen stated that he continued to battle daily depression, but that this was due to physical issues and not being able to physically work. (R. at 725.) Keen said that it took him a long time to work on his car or do any yard work. (R. at 725.)

In many of his reports, Counts notes that Keen complains of not having the financial resources to seek additional medical treatment. On each of these occasions, Counts advises Keen to seek treatment at the Health Wagon, a local free clinic. In fact, many of Counts's sessions appear to focus more on assisting Keen with obtaining social services rather than any type of mental health counseling.

On October 1, 2012, Counts completed another Medical Assessment Of Ability To Do Work-Related Activities (Mental), which stated that Keen had an

-13-

unsatisfactory or no useful ability to make all occupational, performance and personal-social work adjustments. (R. at 677-79.) Counts noted Keen's statement that he could no longer physically work due to disabling pain. (R. at 678.)

Phil Pack, M.S., a licensed psychological practitioner, completed a consultative psychological evaluation of Keen at his counsel's request on October 6, 2012. (R. at 693-98.) Pack noted that Keen drove the 45-minute trip to his office by himself. (R. at 694.) He stated that Keen walked slowly "with a somewhat stooped posture." (R. at 694.) Keen told Pack that he had suffered from chronic pain and restrictions on his physical functioning preventing work since he hurt his back lifting firewood at home in January of 2010. (R. at 694.) Keen told Pack that he had become overwhelmed when his father, mother and brother died within a 10-month period in 1999 to 2000. (R. at 695.) Keen reported that he cared for his father and mother at home before their deaths and was present when his brother shot and killed himself while cleaning a gun. (R. at 695.) Keen admitted to long-standing use of marijuana, beginning at the age of eight, with his most recent use two months earlier. (R. at 696.)

Pack noted that Keen was alert and oriented with intact long- and short-term memory. (R. at 697.) He stated that Keen's mood was pleasant and friendly, and his affect was broad. (R. at 697.) Pack stated that Keen became tremulous and tearful when talking about the deaths of his father, mother and brother. (R. at 697.) Pack said that Keen described experiencing symptoms of post-traumatic stress disorder, ("PTSD"), in regards to intrusive thinking, generalized symptoms of anxiety and recurrent nightmares. (R. at 697.) Pace stated that Keen's thought processes were clear in form with no perceptual disturbance, and his judgment and insight were fair. (R. at 697.)

Pack diagnosed PTSD chronic, and dysthymic disorder. (R. at 698.) He placed Keen's GAF score at 60. Pack completed a Medical Assessment Of Ability To Do Work-Related Activities (Mental), which stated that Keen had an unlimited ability to function independently, to understand, remember and carry out simple job instructions and to maintain personal appearance, a satisfactory ability to follow work rules, to interact with supervisors, to maintain attention and concentration, to understand, remember and carry out detailed, but not complex, job instructions and to behave in an emotionally stable manner and either an unsatisfactory or no useful ability to relate to co-workers, to deal with the public, to use judgment with the public, to deal with work stresses, to understand, remember and carry out complex job instructions, to relate predictably in social situations and to demonstrate reliability. (R. at 700-01.) Pack listed no findings to support this assessment. Pack also checked a box on a form stating that Keen's mental impairment met the listed impairment for an anxiety-related disorder, found at 20 C.F.R. Part 404, Subpart P, Appendix No. 1, § 12.06. (R. at 704-07.)

## III. Analysis

The Commissioner uses a five-step process in evaluating DIB and SSI claims. *See* 20 C.F.R. §§ 404.1520, 416.920 (2015). *See also Heckler v. Campbell*, 461 U.S. 458, 460-62 (1983); *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981). This process requires the Commissioner to consider, in order, whether a claimant 1) is working; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of a listed impairment; 4) can return to his past relevant work; and 5) if not, whether he can perform other work. *See* 20 C.F.R. §§ 404.1520, 416.920. If the Commissioner finds conclusively that a claimant is or is

not disabled at any point in this process, review does not proceed to the next step. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a) (2015).

Under this analysis, a claimant has the initial burden of showing that he is unable to return to his past relevant work because of his impairments. Once the claimant establishes a prima facie case of disability, the burden shifts to the Commissioner. To satisfy this burden, the Commissioner must then establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience and impairments, to perform alternative jobs that exist in the national economy. *See* 42 U.S.C.A. §§ 423(d)(2)(A), 1382c(a)(3)(A)-(B) (West 2011 & West 2012); *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983); *Hall*, 658 F.2d at 264-65; *Wilson v. Califano*, 617 F.2d 1050, 1053 (4th Cir. 1980).

Keen argues that substantial evidence does not exist to support the ALJ's finding regarding his residual functional capacity. (Plaintiff's Memorandum In Support Of His Motion For Summary Judgment, ("Plaintiff's Brief"), at 4-6.) In particular, Keen argues that the ALJ erred by giving little weight to the mental assessments of Counts and Pack. (Plaintiff's Brief at 6.) Keen also argues that the ALJ erred by improperly assessing the effect of pain on his ability to work. (Plaintiff's Brief at 6-7.) Based on my review of the record, I do not find Keen's arguments persuasive.

As stated above, the court's function in this case is limited to determining whether substantial evidence exists in the record to support the ALJ's findings. This court must not weigh the evidence, as this court lacks authority to substitute its judgment for that of the Commissioner, provided her decision is supported by

substantial evidence. *See Hays*, 907 F.2d at 1456. In determining whether substantial evidence supports the Commissioner's decision, the court also must consider whether the ALJ analyzed all of the relevant evidence and whether the ALJ sufficiently explained his findings and his rationale in crediting evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

By decision dated December 7, 2012, the ALJ denied Keen's claims. (R. at 22-34.) The ALJ found that Keen met the disability insured status requirements of the Act for DIB purposes through December 31, 2014. (R. at 24.) The ALJ found that Keen had not engaged in substantial gainful activity since January 13, 2011, the alleged onset date. (R. at 24.) The ALJ found that the medical evidence established that Keen had severe impairments, namely degenerative disc disease of the lumbar, thoracic and cervical spine, depressive/affective disorder and an anxiety disorder, but he found that Keen did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 24-26.) The ALJ found that Keen had the residual functional capacity to perform the full range of sedentary work, except that he must stand and stretch every 30 minutes, can occasionally reach overhead, stoop, crouch, kneel or climb ramps and stairs, can never climb ladders, ropes or scaffolds, work around heights or use foot controls and is limited to short, simple instructions with superficial interaction with others. (R. at 26-32.) The ALJ found that Keen could not perform his past relevant work as a survey helper, a furnace installer or a warehouse worker. (R. at 32.) Based on Keen's age, education, work history and residual functional capacity and the testimony of a vocational expert, the ALJ found that a significant number of jobs existed in the national economy that Keen could perform, including jobs as a production worker, a packager and an inspector/tester/sorter. (R. at 33.) Thus, the

ALJ concluded that Keen was not under a disability as defined by the Act and was not eligible for DIB or SSI benefits. (R. at 33-34.) *See* 20 C.F.R. §§ 404.1520(g), 416.920(g).

The determination of whether a claimant is disabled by pain or other subjective symptoms is a two-step process under the Act. *See Craig v. Chater*, 76 F.3d 585, 594-95 (4th Cir. 1996); 20 C.F.R. §§ 404.1529(b), (c), 416.929(b), (c) (2015). First, there must be objective medical evidence showing the existence of an impairment that could reasonably be expected to produce the actual pain or other symptoms, in the amount and degree alleged by the claimant. *See Craig*, 76 F.3d at 594-95. Only after the existence of such an impairment is established must the ALJ consider the intensity and persistence of the claimant's pain or symptoms and the extent to which they affect the ability to work. *See Craig*, 76 F.3d at 595. Although a claimant's subjective allegations may not be discredited solely because they are not substantiated by objective evidence of the pain or symptom itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence. *See Craig*, 76 F.3d at 595. Evidence of a claimant's activities as affected by the pain is relevant to the severity of the impairment. *See Craig*, 76 F.3d at 595.

Furthermore, an ALJ's assessment of a claimant's credibility regarding the severity of pain is entitled to great weight when it is supported by the record. *See Shively v. Heckler*, 739 F.2d 987, 989-90 (4th Cir. 1984). "[S]ubjective evidence of pain cannot take precedence over objective medical evidence or the lack thereof." *Parris v. Heckler*, 733 F.2d 324, 327 (4th Cir. 1984) (citation omitted). Protection of a claimant's power to establish the existence of disabling pain even without objective evidence of the pain's severity ensures the claimant only the opportunity

to persuade the ALJ; it does not, obviously, ensure a favorable result for the claimant. As in the case of other factual questions, credibility determinations as to a claimant's testimony regarding his pain are for the ALJ to make. *See Shively*, 739 F.2d at 989-90 (affirming ALJ's decision to discredit claimant's testimony as to pain that was out of proportion with objective evidence because the court was persuaded that ALJ considered the testimony). To hold that an ALJ may not consider the relationship between the objective evidence and the claimant's subjective testimony as to pain would unreasonably restrict the ALJ's ability to meaningfully assess a claimant's testimony.

As stated above, the ALJ found that Keen could perform the full range of sedentary work, except that he must stand and stretch every 30 minutes, can occasionally reach overhead, stoop, crouch, kneel or climb ramps and stairs, can never climb ladders, ropes or scaffolds, work around heights or use foot controls and is limited to short, simple instructions with superficial interaction with others. (R. at 26-32.) Keen argues that the ALJ improperly discredited his allegations of chronic disabling pain in reaching his findings as to Keen's residual functional capacity and his ultimate determination that Keen was not disabled. Keen argues that he suffers from severe pain that renders him unable to sit, stand, walk or concentrate for prolonged periods. (Plaintiff's Brief at 7.)

Regarding Keen's allegations of disabling pain, the ALJ found that Keen's impairments, namely degenerative disc disease of the lumbar, thoracic and cervical spine, depressive/affective disorder and an anxiety disorder, could reasonably be expected to cause Keen's alleged symptoms. (R. at 26-29.) Nonetheless, the ALJ found that Keen's statements regarding his symptoms were not credible to the extent they were inconsistent with his residual functional capacity finding. (R. at

29.) In support of this finding, the ALJ noted that Keen's treatment had been conservative in nature. (R. at 30.) The evidence of record shows that Keen has been treated primarily by his general practitioners with medications for both his back pain and mental impairments. (R. at 446-485, 612-667, 727-32.) The ALJ also noted that the dosage and frequency of the medications Keen took for pain, depression and anxiety have remained the same over time. (R. at 30.) In fact, the ALJ noted that Keen had seen a specialist for his back pain on only one occasion and had never seen a psychiatrist for his mental impairments. (R. at 30.) The ALJ correctly noted that x-ray imaging of Keen's spine showed only mild degenerative changes. (R. at 27.) The ALJ also correctly noted that Keen repeatedly reported that his medications helped his pain and depression. (R. at 28, 30.) The ALJ also noted that Keen's physical therapy and chiropractic treatment did not reveal any severe restriction of movement, nor did it result in any restrictions or limitations on his work-related abilities. (R. at 27-28.) Based on this, I find that the ALJ properly analyzed Keen's subjective complaints and that substantial evidence supports his rejection of those complaints, insofar as they are inconsistent with his finding as to Keen's residual functional impairment.

I also find that substantial evidence supports the ALJ's rejection of Counts's and Pack's assessments of Keen's work-related abilities. While Counts and Pack are licensed mental health professionals, neither of them are licensed psychologists or psychiatrists. From a review of Counts's report, it appears that he offered little in the way of psychological assessment or counseling. Furthermore, any restrictions he placed on Keen's work-related abilities appear to be based almost wholly on Keen's subjective complaints of disabling pain. As the ALJ pointed out, Counts's assessment of Keen's GAF score at 55, or suffering from moderate symptoms, is inconsistent with his assessment that Keen had an unsatisfactory or

no useful ability to make all occupational, performance and personal-social work adjustments. It also is important to note that Counts's opinions were formed without knowing that Keen had a long-standing history of marijuana use, as reported to Pack.

Pack placed fewer severe restrictions on Keen's work-related abilities, but, as the ALJ pointed out, several of the more severe restrictions are inconsistent with Pack's findings in his narrative report. As the ALJ noted, Keen related well with Pack and made no major complaints about getting along with or interacting with others. Nonetheless, Pack found that Keen had an unsatisfactory or no useful ability to relate to co-workers, to deal with the public and to relate predictably in social situations. Also, Pack's opinions were based on a one-time evaluation of Keen.

Based on the above reasoning, I find that substantial evidence exists to support the ALJ's weighing of the medical evidence in determining Keen's residual functional capacity. I also conclude that substantial evidence supports the ALJ's finding that Keen was not disabled. An appropriate order and judgment will be entered.

DATED:    September 23, 2015.

/s/ *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE